IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 21-326 |
| | : | |
| THOMAS CLARK | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                 **March 7, 2025**

Defendant Thomas Clark moves to suppress all physical evidence—including drugs and firearms—obtained during a search of his residence in Cherry Hill, New Jersey on June 1, 2021. Clark argues the underlying affidavit of probable cause contained an omission that, if corrected, would have resulted in a defective warrant for lack of probable cause. For this reason, Clark argues he is entitled to a *Franks* hearing and that all physical evidence from the search should be suppressed. The Court finds that while the original affidavit did contain an omission made with reckless disregard for the truth, the omission was not material to the probable cause determination. As a result, Clark's request for a *Franks* hearing and motion to suppress will be denied.

**BACKGROUND**

In spring 2021, the Drug Enforcement Agency (DEA) identified Defendant Thomas Clark as a "high level poly-drug . . . distributor" in the Philadelphia area. ECF No. 54-1 ¶ 7. Around that time, DEA agents developed a relationship with a confidential source ("CS") who told agents he/she had purchased drugs in bulk quantities from Clark on many occasions over the last several years, and that their transactions were coordinated by cellphone. *Id.* On April 28, 2021, DEA agents set up the first of two controlled buys with Clark, directing the CS to negotiate a future purchase of crystal methamphetamine from him. *Id.* ¶ 9. On May 5, 2021, the CS met Clark and purchased what was later confirmed to be methamphetamine for $3,400. *Id.* ¶¶ 10-17. After the transaction, DEA agents

1

observed Clark drive directly to a house at 1112 Society Hill Boulevard in Cherry Hill, New Jersey 08003, where he drove into the garage. *Id.* ¶ 20. The address matched the one reported for Clark in an open-source database search. ECF No. 54-2 ¶ 10.

Following the first controlled buy, Special Agent Eugene Giallombardo sought a search warrant for the collection of Clark's cellphone location data and Pen Register tap and trace data. *See* ECF No. 54-1. In his affidavit seeking the warrant, Special Agent Giallombardo described the utility of the data, stating that because Clark carried the cellphone with him, the data would assist law enforcement in "conducting surveillance and identifying locations where the targets sell or store drugs and store the proceeds." *Id.* ¶ 24. He stated this would be necessary because "persons who are involved in larger scale drug operations will typically not keep a large quantity of their illegal products at their residence and will typically utilize other concealable locations to avoid apprehension and to protect the profits of said business." *Id.* ¶ 23. Additionally, Special Agent Giallombardo noted Clark's cellphone was registered to another individual—suggesting that Clark might be trying to evade law enforcement—and that Clark had likely used the cellphone in past drug dealings with the CS. *Id.* ¶¶ 21-22. Special Agent Giallombardo further supported his affidavit by describing his extensive law enforcement experience and training, including his specific knowledge of drug trafficking practices. *See, e.g.*, *id.* ¶¶ 3-4, 23. Based on the affidavit, the Honorable Marilyn Heffley approved a search warrant for Clark's cellphone data on May 10, 2021. *Id.* at 13.

On May 17, 2021, DEA agents coordinated a second controlled buy between the CS and Clark. ECF No. 54-2 ¶¶ 28-36. That day, agents observed Clark drive directly from the garage at 1112 Society Hill Boulevard to meet the CS at the pre-determined location. *Id.* ¶ 34. The CS purchased what was later confirmed to be methamphetamine from Clark for $3,400. *Id.* ¶ 36. After

the buy, law enforcement observed Clark briefly stop at a Wawa—where he did not meet or contact anyone—and then return to 1112 Society Hill Boulevard. *Id.* ¶ 39.

After the second controlled buy, Special Agent Giallombardo requested another warrant, this time to search the house at 1112 Society Hill Boulevard ("target location"). *See* ECF No. 54-2. Giallombardo believed the target location was Clark's primary residence based on the cellphone location data, which frequently placed Clark's cellphone at the home, including overnight. *Id.* ¶¶ 13, 40. In his supporting affidavit, Special Agent Giallombardo submitted there was probable cause to believe the residence contained "evidence, proceeds, and instrumentalities of CLARK's drug trafficking activities." *Id.* ¶ 6. Specifically, he stated that based on his training, he was aware that it is "generally a common practice for drug traffickers to store their drug inventory, drug paraphernalia, drug proceeds, and drug records at or in their residences" along with other related information such as contact information for drug suppliers and customers. *Id.* ¶ 41. Special Agent Giallombardo further stated there was probable cause to believe the house contained large sums of money given the common practice of drug traffickers hiding money in their homes and because on two occasions, Clark had "returned directly back to the TARGET LOCATION after acquiring a large sum of money after engaging in a controlled drug transaction." *Id.* ¶ 43. Giallombardo also stated it was likely the target location contained firearms given the inherent danger of drug trafficking and the need for protection. *Id.* ¶ 45. As with the first affidavit, Giallombardo supported his averments by describing his law enforcement experience and training, including his specialized knowledge of drug trafficking. *See* ECF No. 54-2.

The Honorable Matthew Skahill authorized the search warrant on May 25, 2021. *Id.* at 22. A week later, on June 1, 2021, law enforcement executed the search warrant for Clark's home, at which time they arrested Clark and found various drugs—including methamphetamine, cocaine, PCP, and

fentanyl—and four firearms. *See* ECF No. 54-3. On August 18, 2021, Clark was indicted on various drug and firearm charges. ECF No. 54 at 4.

**DISCUSSION**

Clark now moves for a *Franks* hearing and to suppress all physical evidence seized during the search of the target location, arguing the warrant authorizing the search lacked probable cause due to a deliberate and material omission in the affidavit submitted by Special Agent Giallombardo. The specific omission at issue for Clark is the phrase "persons who are involved in larger scale drug operations will typically not keep a large quantity of their illegal products at their residence," which was included in the first affidavit seeking data regarding Clark's cellphone, but excluded from the second affidavit seeking to search Clark's home. Because the omission did not impact the probable cause finding, Clark is not entitled to a *Franks* hearing. For the same reason, the physical evidence seized from his home will not be suppressed.

The Fourth Amendment provides that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. This protection is grounded in the "obvious assumption" that the affiant seeking the warrant will make a truthful showing. *Franks v. Delaware*, 438 U.S. 154, 164 (1978) (internal citation omitted). If a criminal defendant believes an affiant was untruthful—thus resulting in a warrant lacking probable cause—the defendant may challenge the warrant by seeking an evidentiary hearing, known as a *Franks* hearing. *Id.* at 171-72. Defendants are entitled to a *Franks* hearing where they make a "substantial preliminary showing" of two prongs: "(1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause." *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022). Defendants must establish their allegations with proof that contradicts the original affidavit; mere conclusory

statements or allegations of mistake or negligence are insufficient. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).

Under the first prong, "false statements" can take the form of either an omission or an assertion. *Desu*, 23 F.4th at 234. An omission—as is at issue here—is made with reckless disregard for the truth when the affiant withholds a fact that any reasonable person would know is "the kind of thing the judge would wish to know." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (internal citation omitted). As part of this inquiry, courts look to (1) whether the officer knew about the omitted information and (2) whether it was relevant to the probable cause determination. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 471 (3d Cir. 2016). The Third Circuit has recognized that while law enforcement officers are not required to relay every detail in their probable cause affidavits, they are required to provide the necessary information such that an uninterested party— a neutral magistrate judge—can properly assess probable cause. *Wilson*, 212 F.3d at 788.

Where a defendant makes a sufficient showing that an omission with reckless disregard exists, a court must then assess the second prong and determine whether the corrected affidavit still provides a basis for probable cause. *Yusuf*, 461 F.3d at 383. In other words, a court must evaluate whether the omission was material or necessary to the probable cause finding. *Id.* A court does so by (1) creating a reconstructed affidavit that supplies the omitted information to the original affidavit and (2) assessing probable cause based on the reconstructed affidavit. *Id.* at 384. If a court finds that a defendant has made a substantial preliminary showing of both prongs, the defendant is then entitled to a *Franks* hearing, at which they must prove their allegations by a preponderance of the evidence for the evidence to be suppressed. *Desu*, 23 F.4th at 234.

Here, the Court finds that Clark has made a substantial preliminary showing that the warrant contained a false statement made with reckless disregard for the truth, thus satisfying the

first *Franks* prong. In the first affidavit—seeking data regarding Clark's cellphone—Special Agent Giallombardo described the necessity of the cellphone data by stating that "persons who are involved in larger scale drug operations will typically **not** keep a large quantity of their illegal products at their residence." ECF No. 54-1 ¶ 23 (emphasis added). Yet fifteen days later, in seeking a warrant to search Clark's home, Giallombardo wrote it is "generally a common practice for drug traffickers to store their drug inventory . . . at or in their residences" without mentioning his prior statement averring nearly the opposite. *See* ECF No. 54-2 ¶ 41. Clark argues this omission was made with reckless disregard. The Court agrees.

An agent's assessment of whether drug dealers tend to keep drugs in their homes—or not—is the kind of information a judge would want to know in determining whether to authorize the search of a drug dealer's home. Special Agent Giallombardo—like any reasonable person—clearly understood this because he represented to Judge Skahill that it was common for drug dealers to store drugs in their residences. That Giallombardo had recently told another judge that drug dealers "will typically not keep a large quantity of their illegal products at their residence" would have been relevant information for Judge Skahill to consider, especially given that recovering drugs was one of justifications for searching Clark's home. *Id.* ¶ 47 ("[Y]our affiant believes that CLARK stores drugs . . . inside of the TARGET LOCATION."). The Court agrees with Clark that law enforcement officers may not conveniently tailor their affidavits to the location they seek to search. The requirement that affiants make truthful showings means agents may not tell different stories to different judges.[1]

---

[1] In trying to square the two affidavits, the Government argues the statement in the first affidavit pertained to "persons who are involved in larger scale drug operations" whereas the statement in the second affidavit described "drug traffickers." *See* ECF No. 55 at 5. The Court is unpersuaded there is any meaningful difference between these terms that explains the divergent descriptions of whether a drug dealer is likely to store drugs at home.

Having found that Special Agent Giallombardo's affidavit contained a false statement, the Court now moves to the second prong of *Franks*, to determine whether the affidavit—reconstructed to correct the omission—establishes probable cause. *Yusuf*, 461 F.3d at 384. The Court finds it does and therefore, that Clark has failed to meet his burden under the second prong.

"To obtain a search warrant, the government must present probable cause that evidence of criminal activity will be found in the place to be searched." *United States v. Alexander*, 54 F.4th 162, 171 (3d Cir. 2022). Probable cause "is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). To determine whether probable cause exists, the reviewing judge must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates*, 462 U.S. at 238).

Where direct evidence is not available, probable cause may be inferred based on "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]." *Id.* (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir.1993)). The Third Circuit has extended these inferences to cases in which law enforcement seeks to search the home of a presumed drug dealer, finding that it is "a reasonable inference to conclude that drug dealers often store evidence of drug crimes in their residence." *Id.* at 559 (internal citation omitted). However, the Circuit has also made clear that inference exists only where there is evidence to support three preliminary premises: "(1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it

to the dealer's activities." *Id.* (internal citation omitted). Searching a drug dealer's home merely because they are a drug dealer is not permissible; searches are justified only where there is a "nexus" between the home and the drug-dealing activities. *Id.* To assess whether such a nexus exists, courts may consider various factors, including but not limited to: "large-scale operations, a defendant's attempts to evade officers' questions about his address, the conclusions of experienced officers regarding where evidence of a crime is likely to be found, the proximity of the defendant's residence to the location of criminal activity, probable cause to arrest the defendant on drug-related charges, and the tip of a 'concerned citizen' that a specific stolen item would be found in the defendant's residence." *Id.* at 559-60.

Here, the Court finds the reconstructed affidavit establishes probable cause to search Clark's home at 1112 Society Hill Boulevard in Cherry Hill, New Jersey. To reconstruct the affidavit, the Court adds the statement "persons who are involved in larger scale drug operations will typically not keep a large quantity of their illegal products at their residence" to the second affidavit, which includes the statement describing the common practice of drug traffickers storing drug inventory in their residences. The awkward reconstruction essentially creates a contradictory affidavit, in which drug dealers are described as both tending to keep and not keep drugs in their residences. While the juxtaposition of these statements creates some confusion, there is sufficient information elsewhere in the affidavit to justify searching Clark's home.

In line with the three-part test outlined in the *Stearn*, the affidavit readily identifies Clark as a drug dealer, supported by the information provided by the CS and the two controlled buys. The affidavit also states the target location is likely Clark's residence given the cellphone location data which regularly placed him at the residence, including overnight. Lastly, the affidavit provides a sufficient link between the target location and Clark's drug dealing activities.

8

For one, the affidavit shows that after both controlled buys, Clark drove either immediately or almost immediately to the target location, each time carrying thousands of dollars in cash from the drug sale. It is reasonable to infer Clark stored the money at the target location, at least temporarily.[2] Moreover, for the second controlled buy, Clark was seen driving directly from the target location to meet the CS, leading to a reasonable inference that on that occasion, the crystal methamphetamine that Clark sold came from the target location. In addition to drugs and drug proceeds, the affidavit also describes other relevant items that may be found in a drug dealer's home, such as Clark's, including drug paraphernalia, financial records, and contact information for drug suppliers and customers. ECF No. 54-2 ¶ 41. Finally, a review of the additional factors outlined in *Stearn* further establishes the link between the target location and Clark's drug dealing activities: law enforcement believed Clark to be a large-scale operator who had made bulk sales on many occasions over the years; Clark's home was only a twenty-minute drive from the sales;[3] and probable cause existed to arrest Clark for drug-related charges based on the controlled buys. In their totality, these other factors more than make up for any confusion the reconstructed affidavit

---

[2]   *See United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002) ("The inference that drug dealers keep evidence of their transactions at home is "much stronger when the home is the first place a drug dealer proceeds following such a transaction."); *United States v. Chamberlain*, No. 20-362, 2022 WL 425889, at *5 (E.D. Pa. Feb. 11, 2022) ("Defendant was seen entering the subject property with a key immediately after conducting an illegal drug transaction, thus allowing the inference that proceeds of the drug transaction would be located therein."); *United States v. Majeed*, No. 08-186, 2009 WL 2393921, at *9 (E.D. Pa. Aug. 4, 2009) ("The fact that [the defendant] returned directly to these residences immediately after apparently engaging in trafficking-related activities lends credence to the troopers' belief that contraband was likely to be found at those residences.").

[3]   In a supplemental letter brief to the Court, Clark argues his home and the site of the controlled buy were not in close proximity. Def.'s Letter Br. 4 (noting the distance was 12.1 miles or a 20 to 23-minute drive). While the locations could have been closer, the Court is not convinced a twenty-minute drive weighs against a finding of proximity, particularly in the context of a large metropolitan area. *See United States v. Rosario*, 837 F. App'x 117, 120 (3d Cir. 2020) (finding sufficient proximity where defendant's home was "at most twelve miles [away] and a drive could take up to thirty minutes").

created as to whether drugs were or were not likely to be stored in the target location.[4] A probable cause finding requires a common-sense determination about whether contraband is likely to be found in the home, which the affidavit sufficiently establishes independent of the reconstructed section. Because the omission was not material to the probable cause determination, Clark has failed to meet his burden under the second prong of *Franks*.[5] For these same reasons, the evidence will not be suppressed.

**CONCLUSION**

While the affidavit submitted by Special Agent Giallombardo to Judge Skahill contained an omission made with reckless regard for the truth, the omission was not material to the probable cause determination. Because there was probable cause to search the target location, Clark's request for a *Franks* hearing and his motion to suppress will be denied.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[4] Clark argues the passage of time between the controlled buys and the execution of the search warrant diminish any inference that drugs would be found in his house. Def.'s Letter Br. 4. The Court is not persuaded the passage of time in this case rendered the information stale. The second search warrant was issued on May 25, 2021, only eight days after the second controlled buy and twenty days after the first, hardly much of a delay. *United States v. Caple*, 403 F. App'x 656, 659 (3d Cir. 2010) (information was not stale where the last controlled buy took place weeks before the warrant was issued). Moreover, because Clark was identified in the affidavit as having sold drugs over the last several years, ECF No. 54-2 ¶ 8, staleness was less of a concern. *See United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997) ("[W]hen the criminal activity has been going on continuously for years, staleness is of less concern").

[5] Because Clark is not entitled to a *Franks* hearing, the Court need not consider Giallombardo's testimony, which was provided during the November 14, 2024 motion hearing for the Court to consider in the event it found a *Franks* hearing was justified.